# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 2124 | **DATE** | 10/4/2011 |
| **CASE TITLE** | Kevin Sroga vs. CPS-Chicago Public Schools, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the Court grants plaintiff's motion to proceed *in forma pauperis* [# 4] and gives him leave to file his proposed amended complaint but dismisses all claims in that complaint other than Counts 5 and 12 and all of the named defendants other than Ronald Huberman and the Chicago Board of Education. The Clerk is directed to issue summons to those two defendants, and the U.S. Marshal is appointed to serve them with summons. Plaintiff is directed to cooperate with the Marshal as requested to facilitate service of summons. The case is set for a status hearing on December 5, 2011 at 9:30 a.m. in Judge Kennelly's courtroom (Room 2188). If plaintiff fails to appear, the Court may dismiss the case for want of prosecution.

■[ For further details see text below.]                                                          Docketing to mail notices.

## STATEMENT

Plaintiff Kevin Sroga filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 along with a motion to proceed *in forma pauperis*, that is, without paying the usual filing fee. The Court reviewed the complaint pursuant to 28 U.S.C. § 1915(e) and dismissed it in an order dated April 11, 2011. In that order, the Court gave Mr. Sroga until May 2 to file a proposed amended complaint and said it would assess that complaint if and when Mr. Sroga filed it. Mr. Sroga filed a proposed amended complaint in timely fashion. The Court has reviewed the complaint pursuant to the standards in 28 U.S.C. § 1915(e)(2). The Court apologizes for its lengthy delay in issuing this order regarding its consideration of the proposed amended complaint.

The Court first summarizes the allegations that Mr. Sroga makes in his proposed amended complaint. He alleges that Chicago Board of Education (CBE) hired him as a high school teacher in 2006 and renewed his contract for 2007-08. In September 2007, Mr. Sroga alleges, that he was unlawfully stopped by Chicago police officers and charged with an offense or offenses (he does not identify the nature of those charges in his complaint). He alleges that one or more of the officers attempted to get his supervisor Marisa Velasquez to sign a felony criminal complaint against him for burglary. Ms. Velasquez told Mr. Sroga about this and said she would be willing to testify about her encounter with the police.

In October 2007, Mr. Sroga was removed from his classroom and reassigned pending an investigation, after he reported an inappropriate encounter with a female student. He says that in November 2007, he was asked to come to the office of the CBE's inspector general for an interview by Juan Carlos Michel. Mr. Sroga alleges that he refused to answer questions due to the pending criminal charge against him and was told that refusal to answer questions would be grounds for termination. He decided to proceed with the interview after Mr. Michel told him that his statements could not be used against him in a criminal case, a representation that Mr. Sroga alleges was untrue. Mr. Sroga alleges that he was in effect coerced to give the interview.

Mr. Sroga says that he was eventually terminated by the CBE after he attempted to obtain evidence for use in his defense against the criminal charges. He alleges that he subpoenaed the CBE inspector general's office to obtain copies of Ms. Velasquez's statements. The inspector general's office initially stated that it would not honor the subpoena, but Mr. Sroga alleges that after he served a second subpoena and explained why he needed the information, the inspector general's office produced the information he sought. Mr. Sroga also alleges that CBE legal department personnel urged or instructed Ms. Velasquez not to cooperate with him in his criminal case. As a result, he says, Ms. Velasquez failed to abide by a subpoena he served on her. She appeared at the trial in his case after being subpoenaed by the prosecution, but according to Mr. Sroga she falsely claimed to have no memory of the Chicago police officers' attempt to get her to sign a burglary complaint against him.

Mr. Sroga also alleges that he was advised by the CBE labor relations department that an investigatory conference regarding his encounter with the female student had been scheduled for a particular date. He alleges that he advised the CBE and his union representative that he would be unable to attend on the scheduled date due to involvement in other litigation. The CBE allegedly declined to reschedule the conference and went ahead without him. He alleges that he was thereafter advised that he had been suspended pending possible termination. Mr. Sroga alleges that he was discharged on March 25, 2009. He filed his original complaint in this case on March 28, 2011.

Mr. Sroga asserts twelve claims. In count one, he alleges that several defendants interfered with his Sixth Amendment right to due process under the U.S. Constitution. In count two, he alleges that those defendants alleged with his due process rights under the Illinois Constitution. In count three, he alleges that those defendants conspired to violate his federal and state due process rights. In count four, Mr. Sroga alleges that various defendants conspired to violate his equal protection rights under the U.S. Constitution. In count five, he alleges they conspired to violate his state equal protection rights. In count six, he alleges that various defendants engaged in "retaliatory discharge" based on his exercise of federal and state constitutional rights. In count seven, Mr. Sroga alleges that certain defendants failed to intervene to stop other defendants' violations of his constitutional rights. In count eight, he alleges that "supervisory liability" should be imposed upon certain defendants under 42 U.S.C. § 1983. Count nine is a state law claim for intentional infliction of emotional distress. In count ten, Mr. Sroga alleges that the CBE failed to train its employees sufficiently and that this caused the violations of his constitutional rights. Count eleven is a respondeat superior claim. Count twelve is a claim against the CBE seeking indemnification of its employees for their liability to him.

Certain of Mr. Sroga's claims are legally deficient and must be dismissed. One of them, however, appears to state a viable legal claim against one of the defendants Mr. Sroga has named.

1.      Mr. Sroga's claims for involving alleged violations of his due process and Sixth Amendment rights in connection with his criminal case are not legally viable (Counts 1-3). His contentions appear to be that CBE personnel interfered with his attempt to obtain records from the CBE inspector general's office and that CBE legal department personnel persuaded Ms. Velasquez not to appear as a witness pursuant to the subpoena he served on her. But Mr. Sroga alleges that the inspector general's office ultimately complied with his subpoena, and he also alleges that Ms. Velasquez testified at the trial in his criminal case. Though she testified as a prosecution witness rather than as a defense witness, Mr. Sroga does not allege that he was precluded from asking her whatever questions he would have asked had she also testified as a defense witness. Finally, though Mr. Sroga alleges that Ms. Velasquez gave false testimony, he does not identify any of the defendants he names in these particular counts as having importuned Ms. Velasquez to lie. Nor can he sue Ms. Velasquez for her false testimony; she is immune from liability in this regard. *See Briscoe v. LaHue*,

460 U.S. 325, 334, 342-43 (1983). (In connection with that particular criminal charge, Ms. Velasquez was not the "complaining witness." *See Malley v. Briggs*, 475 U.S. 335, 340-41 (1986).)

2. Mr. Sroga has failed to state a claim for deprivation of his equal protection rights (Counts 4-5) because he does not identify in his complaint any class-based discrimination or differential treatment from others who were similarly situated. *See generally Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601-02 (2008).

3. Mr. Sroga appears to have stated a claim that he was discharged in retaliation for his exercise of a protected constitutional right (Count 6). In this claim, however, he has sued a number of defendants as to whom he does not allege any involvement in his discharge. The defendants Mr. Sroga names in Count 6 are former CBE chief executive officer Ronald Huberman; first assistant general counsel James Bebley; senior assistant general counsel James Ciesil; CBE attorney James Seaberry; and CBE inspector general employees James Sullivan and Juan Michel; and CBE labor and employee relations director Cheryl Colston. Mr. Sroga does not identify any of these defendants other than Huberman as having participated in the decision to terminate his employment. The Court dismisses this claim as to all named defendants other than Mr. Huberman.

4. Mr. Sroga has failed to state a claim for failure to intervene or supervisory liability against any of the defendants named in those counts of his amended complaint (Counts 7 and 8). Supervisory liability is appropriate under section 1983 only if the supervisor knew about a subordinate's misconduct and facilitated, approved, condoned, or turned a blind eye to it. *See, e.g., Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010). Liability exists for failure to intervene only if the governmental employee had reason to know that the plaintiff's rights were being violated; had a realistic opportunity to intervene to prevent harm from occurring; but failed to do so. *See, e.g., Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2010). Mr. Sroga does not allege anything of the kind with regard to the defendants he names in Counts 7 and 8.

5. Mr. Sroga's claim of municipal liability under section 1983 is legally deficient (Count 10) because he does not identify any policy of CBE that caused his injury with regard to his only surviving section 1983 claim, namely the claim of retaliatory discharge.

6. Mr. Sroga's state law claim of intentional infliction of emotional distress (IIED) is legally deficient (Count 9). His only remaining actionable allegations concern the termination of his employment. Simple termination of employment, even if done for improper reasons, is not a legally viable basis for an IIED claim. *See, e.g., Porter v. New Age Servs. Corp.*, No. 10 C 1784, 2011 WL 1099270, at *6 (N.D. Ill. Mar. 22, 2011). For this reason, Mr. Sroga's respondeat superior claim must also be dismissed (Count 11).

In short, Mr. Sroga's only surviving claims are his retaliatory discharge claim against Mr. Huberman (Count 6) and his indemnification claim against the CBE (Count 12) to the extent it involves the retaliatory discharge claim. The Court will permit him to proceed on those claims against those defendants.