**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEVIN SROGA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| CPS-CHICAGO PUBLIC SCHOOLS: ) | Case No. 11 C 2124 |
| and Ronald Huberman, Marisa ) | |
| Velasquez, Juan Carlos Michel, James ) | HONORABLE MATTHEW F. KENNELLY |
| Sullivan. James Bebley, James Ciesil, ) | |
| James Seaberry, Andres Durbak, Neil ) | MAGISTRATE JUDGE SHEILA FINNEGAN |
| O'Connell, Cheryl Colston, and John and ) | |
| Jane Doe(s) Individually, and THE ) | |
| CHICAGO BOARD OF EDUCATION, ) | |
| A MUNICIPAL ORGANIZATION ) | |
| CREATED AND MANAGED BY THE ) | JURY TRIAL DEMANDED |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## SECOND AMENDED COMPLAINT

Kevin Sroga, through his attorneys, Stephen D. Erf and Kaitlin P. Sheehan of McDermott Will & Emery LLP, states the following as his Second Amended Complaint:

## NATURE OF ACTION

1. This is an action pursuant to 42 U.S.C. § 1983 to secure reinstatement and a make whole remedy for Plaintiff Kevin Sroga, who has been terminated in retaliation for having exercised his Sixth Amendment right to subpoena his former Assistant Principal to testify at a trial and to subpoena investigatory materials from the Inspector General, and for violating his Fifth Amendment right against self-incrimination. Additionally, Sroga seeks compensatory and punitive damages under Illinois law based on the Chicago Board of Education's retaliatory discharge of Sroga for exercising his rights under the Fifth and Sixth Amendments to the United

States Constitution and under Article I of the Illinois Constitution. Finally, Sroga seeks indemnification from the Chicago Board of Education pursuant to 745 ILCS § 10/9-102.

## JURISDICTION AND VENUE

2. This action arises under the Fifth and Sixth Amendments to the United States Constitution and 42 U.S.C. § 1983.

3. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 1331. Supplemental jurisdiction is conferred by 42 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because it is the District in which a substantial part of the events giving rise to the claim occurred and the Defendants reside.

## PARTIES[1]

5. Plaintiff Kevin Sroga ("Sroga") is and at all relevant times has been a citizen of the United States and a resident of the State of Illinois.

6. Defendant Chicago Board of Education ("CBE") is organized under the laws of the State of Illinois and is responsible for the operation of the public schools within the City of Chicago, Illinois. The principal office of the Board of Education is located at 125 South Clark Street, Chicago, Illinois.

---

[1] Certain parties and claims were dismissed by the Court by Order dated October 4, 2011 and are not renewed in this pleading. Pending an opportunity to secure accurate information through discovery, Plaintiff may seek leave to file an amended complaint renewing and/or asserting different claims against one or more of those parties.

2

7. Defendant Ronald Huberman ("Huberman") was the Chief Executive Officer of the Chicago Public Schools ("CPS") at the time of the events in question and is sued in his personal and official capacity.

8. Defendant Office of the Inspector General ("OIG") is organized and authorized by the State of Illinois and has been granted final policy-making authority by the Illinois legislature and the CBE to conduct investigations, including without limitation the responsibility to preserve evidence and report possible criminal acts to the Chicago Police Department ("CPD") and the Cook County State's Attorney ("State's Attorney).

9. Defendant James Sullivan ("Sullivan") is the Inspector General and is the head of the Office of the Inspector General ("OIG") and is sued in his personal and official capacity.

10. Defendant Juan Carlos Michel is an Investigator in the OIG and is sued in his personal and official capacity.

**FACTS**

11. Based on interviews by Farragut Principal Theresa Plascencia ("Plascencia") and Al Brown, Director of Education To Careers ("ETC") (a CPS Division), CPS hired Sroga for the 2006-2007 academic school year to teach automotive technology/education at Farragut Career Academy High School ("Farragut") in the City of Chicago, Illinois.

12. CPS did not permit Sroga to attend the orientation at the start of the school year, pending clarification of a misunderstanding regarding his background check. After Sroga explained the reasons for an apparent discrepancy, CPS cleared Sroga to commence his teaching responsibilities. CPS never provided an orientation or the CPS rules to Sroga.

13. When Sroga commenced his teaching assignment at Farragut, the Assistant Principals were Marisa Velasquez ("Velasquez") and Michael Westlove ("Westlove"), and the Dean of Students was Linda Trevino ("Trevino").

14. Because the vehicles provided by Farragut were not sufficient to permit Sroga to teach the students and with the encouragement of ETC, Sroga brought vehicles he personally owned to Farragut and used them to assist in teaching the class. Sroga provided all parts required to repair those vehicles.

15. Sroga's performance as a teacher during the 2006-2007 academic school year was exemplary.

16. Based on Sroga's exemplary performance, CPS renewed Sroga's employment for the 2007-2008 academic year at Farragut.

17. Sroga also was engaged by ETC to teach automotive repair and maintenance at Farragut during the Summer of 2007.

18. In 2006 and again in September 2007, Plascencia assigned Rogelio Diaz ("Diaz"), employed by CPS as a security aid, to assist Sroga in teaching his class and maintaining discipline of the approximately 50 students in one of his several classes.

19. Sroga was required to attend court on certain occasions to defend himself against false allegations of criminal conduct lodged by police officers whom Sroga believed were engaged in a vendetta against him.

4

20. Whenever Sroga was required to attend court at a time that conflicted with his teaching responsibilities, Sroga informed Diaz and made certain that the class was properly supervised.

21. Whenever Sroga arranged for Diaz to supervise the class in Sroga's absence, Diaz informed Assistant Principal Westlove or Dean of Students Trevino.

22. Neither Trevino nor Westlove ever informed Sroga that his conduct attending court or in arranging for Diaz to supervise the class during his absence to attend court violated CPS rules or policies.

23. On or about September 21, 2007, police officers arrested Sroga for allegedly impersonating a public officer, possessing a police scanner radio, and driving on a revoked driver's license.

24. Velasquez later told Sroga that, on or about September 21, 2007, she had been contacted late in the night by Farragut security personnel, who asked her to call the CPD, and that when she did so, the police officer tried to get her to sign a felony complaint against Sroga for allegedly stealing two "air compressors" from Farragut.

25. The police officer who had requested that Velasquez file a felony complaint against Sroga was an individual that Sroga believed was a participant in the vendetta against Sroga.

26. Sroga had not taken anything from Farragut and the two air tanks in question were Sroga's personal property.

27. Sroga asked Velasquez to remember what happened and what the police officer had said in case he needed to call her as a witness in his defense.

5

28. By letter dated October 10, 2007, CPS removed Sroga from the classroom and temporarily reassigned him to the Area 23 Office pending the outcome of an investigation.

29. The October 10, 2007 removal and reassignment letter did not disclose the reason for the action.

30. However, the OIG's Investigative Summary, which Sroga later secured, states that the OIG received a complaint on October 1, 2007 that Sroga had a criminal history that precludes his employment with CPS.

31. The Area 23 Office was under the supervision of Eugene Crawford ("Crawford").

32. Sroga was told that if he needed to be in court he should use his sick and compensatory time.

33. All time entries while Sroga was assigned to Area 23 Office were entered by administrative staff at Area 23 Office and not by Sroga.

34. Sroga did not knowingly violate any CPS rule.

35. During the period from late 2007 through early 2009, Sroga repeatedly served subpoenas on Velasquez at her then current employment location at the CBE, 125 South Clark Street, Chicago, Illinois ("125 South Clark") to secure her attendance and testimony at his criminal trial. However, Velasquez did not appear in response to the subpoenas.

36. Ultimately, CPS told Sroga that, while he could enter 125 South Clark for any other purpose, he could not enter 125 South Clark for the purpose of serving a subpoena on Velasquez and threatened Sroga with arrest for trespass if he did so.

6

37. On December 13, 2007, Michel interviewed Sroga as part of the OIG investigation. Michel required Sroga to answer questions and told him that any refusal to answer the questions could result in his termination. Michel also told Sroga that any statement or admission cannot be used against Sroga in a subsequent criminal proceeding.

38. Sroga told Michel that he would answer Michel's questions under duress and Sroga answered Michel's questions. The focus of the questions as Sroga understood them was his arrest and conviction record and the underlying events.

39. By letter dated December 21, 2007, Sroga complained to Charles Moore, CSP Director of Investigations about Michel's conduct of the investigation because he did not appear interested in learning of exculpatory information (e.g. the dismissal of criminal proceedings) and appeared to be trying to build a case based on extraneous matters.

40. On February 4, 2008, Sroga returned to OIG to update Michel regarding further dismissals of criminal proceedings.

41. Notwithstanding confirmation by Michel that Sroga did not have a criminal conviction that would preclude Sroga from a teaching position within CPS, Michel and OIG broadened its investigation of Sroga without informing Sroga.

42. In December 2008 or January 2009, Sroga subpoenaed the OIG in a civil case pending in the United States District Court for the Northern District of Illinois to secure copies of investigatory interviews in order to assist in the defense of his criminal proceedings and prosecution of a civil lawsuit alleging police violation of his rights.

43. Sullivan initially agreed to provide the requested materials. However, on January 13, 2009, Sullivan wrote a letter to Sroga, stating that he had misspoken and that OIG was unable at that time to tender any investigatory reports because "the OIG is conducting an investigation to determine what, if any, disciplinary action should be taken against you as a result of your numerous arrests in the last few years" and disclosing reports while the investigation was ongoing would disclose information received from CPS employees. Sullivan's statement was false because the OIG already had concluded that Sroga did not have a conviction that would preclude employment with CPS.

44. On January 26, 2009, the OIG completed the investigatory Summary of Sroga in which it stated OIG had concluded that Sroga's criminal history revealed a conviction that would not preclude employment with CPS but that CPS recommended discipline because he had falsified attendance records, used sick time in violation of CPS rules and used school property to repair and store personal vehicles without authorization. The OIG reached this conclusion without ever having disclosed to Sroga that the scope and focus of the investigation had changed and without ever having given Sroga an opportunity to respond to the new and inaccurate allegations.

45. On February 10, 2009, after Sroga served a second subpoena on the OIG, the CBE Law Department produced to Sroga the 371 page Investigatory Summary dated January 26, 2009.

46. The Investigation Summary and accompanying materials do not support those conclusions and, in fact, undermine those conclusions even without Sroga having had a chance to provide meaningful input on the hidden issues being investigated.

47. Michel, Sullivan and OIG were aware long before January 2009 that court records reflected that Sroga was in court at times that CPS records (that Sroga did not create) reflected

8

Sroga was either at work for CPS or sick. However, none of them ever sought to either learn why that was the case or alert Sroga that his conduct violated CPS rules. Instead, the OIG continued to investigate Sroga for approximately 16 months (or one and three fourths academic terms) while he was on an administrative assignment to do nothing with full pay and benefits.

48. Also by letter dated February 10, 2009, Cheryl Colston ("Colston"), CPS Director of Labor and Employee Relations, notified Sroga that an investigatory conference would be convened on March 5, 2009 at 10:30 a.m. 125 South Clark. For the first time, CPS formally disclosed to Sroga that the conference was based on an allegation that he falsified attendance records, used sick time in an unauthorized manner and used school property without authorization.

49. On March 4, 2009, Sroga and his union representative, Ted Hajiharis ("Hajiharas") asked Colston to reschedule the conference due to a conflict with other court litigation.

50. Even though the OIG had not shown that its 16-month investigation of Sroga was in any way an urgent matter, Colston denied Sroga and Hajiharas's reasonable request to reschedule the conference.

51. Throughout the period from late 2007 through early 2009, Sroga had been attempting to serve (by mail and by sheriff deputy) subpoenas on Velasquez to appear at his criminal proceeding, including without limitation on February 17, 20, 24 and 25 and March 5 and 20, 2009.

52. By letter to Sroga dated March 12, 2009, Huberman stated that based on the results of the investigatory conference held on March 5, 2009 he determined that sufficient basis existed to

terminate Sroga as a probationary appointed teacher and that he was suspended without pay immediately.

53. By letter to Colston and Huberman dated March 18, 2009, Sroga sought reconsideration of the CPS action.

54. By letter to Sroga dated March 24, 2009, Colston stated Sroga's request for reconsideration "cannot be honored."

55. By letter to Sroga dated March 27, 2009, Huberman informed Sroga that on March 27, 2009 the CBE had approved his recommendation, pursuant to Board Rule 4-7b.2(b), to terminate Sroga's employment effective immediately.

56. CPS terminated Sroga's employment without eligibility for rehire.

57. All of the individual Defendants were acting within the scope of their employment when the foregoing events occurred.

58. All of the Defendants were acting in accordance with established policy and practice of the OIG and the CBE when the foregoing events occurred.

## COUNT I
## 42 U.S.C. § 1983 (Sixth Amendment)

59. Plaintiff restates ¶¶ 1-58 as fully set forth herein.

60. Defendants retaliated against Sroga due to his exercise of his rights under the Sixth Amendment by surreptitiously and vastly expanding the scope of the investigation of Sroga, falsely identifying the alleged basis and focus of the investigation, arbitrarily threatening arrest if Sroga entered 125 South Clark for the purpose of serving a subpoena while permitting him to

enter 125 South Clark for any other purpose, and terminating Sroga for conduct for which other CPS employees received significantly lesser discipline.

61. At all times, Defendants acted under color of state law.

62. Defendants' deprivation of Sroga's constitutional rights was pursuant to a policy and practice of the CBE and of the OIG.

63. Under 42 U.S.C. § 1983, Defendants are liable to Sroga for backpay and compensatory damages, and Sroga is entitled to reinstatement and other injunctive relief.

## COUNT II[2]
## 42 U.S.C. § 1983 (Fifth Amendment)

64. Plaintiff restates ¶¶ 1-63 as fully set forth herein.

65. OIG, Sullivan and Michel, on their own and as agents of Huberman and the CBE, compelled Sroga to respond to questions notwithstanding his invocation of his Fifth Amendment right not to answer questions that might tend to incriminate himself.

66. OIG, Sullivan and Michel acted under color of law and in accordance with a rule adopted by the CBE that subjected CPS employees to termination if they failed to answer questions or otherwise failed to cooperate in their investigation.

67. By their compulsion, Defendants have violated Sroga's rights under the Fifth Amendment.

---

[2] In this Circuit, Count II is not viable because the Seventh Circuit has held that a government employee may be compelled to answer questions so long the individual is told that the statement cannot be used against him in a criminal proceeding and Defendants' actions confirmed to the Seventh Circuit's requirements. Sroga seeks a reversal of the Seventh Circuit's rulings.

68.     Defendants also terminated Sroga in retaliation for having exercised his Fifth Amendment right against self-incrimination.

## COUNT III
## 42 U.S.C. § 1983 (Fifth and Sixth Amendment)

69.     Plaintiff restates ¶¶ 1-68 as fully set forth herein.

70.     OIG and CBE are liable under 42 U.S.C. § 1983 as the "cat's paw" for recommending the termination and terminating Sroga based on false information provided by Michel and Sullivan in retaliation for Sroga's exercise of his rights under the Fifth and Sixth Amendments.

## COUNT IV
## 42 U.S.C. § 1983 (Fifth and Sixth Amendment)

71.     Plaintiff restates ¶¶ 1-70 as fully set forth herein.

72.     Michel and Sullivan are individually liable under 42 U.S.C. § 1983 for providing false information to the "cat's paw" CBE in retaliation for Sroga's exercise of his rights under the Fifth and Sixth Amendments and causing CBE to terminate Sroga's employment.

## COUNT V
## Retaliatory Discharge

73.     Plaintiff restates ¶¶ 1-72 as fully set forth herein.

74.     The State of Illinois and the United States government have a clear public policy permitting an accused to compel the appearance and testimony of witnesses and to present a defense in a criminal proceeding.

75.     The State of Illinois and the United States government have a clear public policy prohibiting compelled testimony or other self-incrimination.

76. CBE terminated Sroga's employment in retaliation for exercising his rights under the Fifth and Sixth Amendments to the United States Constitution and Article I of the Illinois Constitution.

### COUNT VI
### Indemnification

77. Plaintiff restates ¶¶ 1-76 as fully set forth herein.

78. Because the actions of the Defendants were taken within the scope of their employment, the CBE is required by 745 ILCS § 10/9-102 to provide indemnification for the liability of the Defendants for the claims asserted by Sroga in this action.

WHEREFORE, Kevin Sroga prays that this Court:

A. Enter an order requiring the Board to reinstate Sroga to his position at Farragut with full seniority and tenure.

B. Award Sroga back pay.

C. Award Sroga compensatory damages.

D. Award Sroga punitive damages pursuant to Count V.

E. Award Sroga his attorney's fees and costs.

E. Award such other relief as is warranted or appropriate.

Dated: April 14, 2014

                                        KEVIN SROGA


                                        BY:      s/ Stephen D. Erf
                                                       One of his attorneys

Stephen D. Erf
Kaitlin P. Sheehan
McDermott Will & Emery LLP
227 West Monroe Street
Suite 4400
Chicago, Illinois 60606
(312) 372-2000

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this 14th day of April, 2014.

/s/ *Stephen D. Erf*
Stephen D. Erf
